In the Matter of the Application of MYLES W. STANDISH,
Respondent, for a Writ of Habeas Corpus to Bring up the
Body of MARY ELIZABETH STANDISH, an Infant.

HAZEL SIMONS TRUITT, Appellant.

Second Department, May 13, 1921.

**Parent and child — habeas corpus by parent to secure child from
guardian — court not limited to determining question of legal
custody — final order of Virginia court in habeas corpus proceed-
ings is res judicata — determination of Virginia court final
though court reserved right to change custody under changed
conditions — no change in condition shown authorizing change
in custody.**

On the return of a writ of habeas corpus granted on the application of a
father for the purpose of securing possession of his child who was held
by its guardian, the court can exercise equity powers and make a decision
depending not alone upon the question of legal custody but based upon
the grounds of expediency and equity, and, above all, the interests of the
child.

On an application for a writ of habeas corpus made by a father, it appeared
that prior to the institution of the proceedings the father had instituted
habeas corpus proceedings in the State of Virginia in which the respond-
ent, the child's guardian, duly appeared though at the time thereof the
guardian and the child, without the knowledge of the relator, were resi-
dents of this State, and the Virginia court after a hearing ordered that
it was for the best interests of the child that it remain for the present
in the custody and control of its guardian, but the court reserved the
right to change the custody of the child when the situation of the parties
made such change desirable.

*Held*, that the proceedings in Virginia were exactly like the present proceedings
and were instituted in a court of competent jurisdiction, having unques-
tionable jurisdiction of the proceedings and the parties, and the final order
in said proceedings is *res judicata* of the questions involved in the
present proceedings, and said final order is entitled to full faith and credit
in this State under section 1 of article 4 of the Federal Constitution.

There is no force in the relator's contention that there was a lack of juris-
diction in the Virginia court or that the proceedings were deprived of
their conclusive character by the fact that the appellant was not then
a resident of Virginia and her appearance was voluntary.

The determination of the Virginia court was final, notwithstanding the
fact that it reserved the right to change the custody of the child when
the situation of the parties made such change desirable.

The relator has not shown by allegation or proof that the appellant is not
as competent and is not in every way just as well fitted to care for the
child at the time of the trial in the present proceedings as she was at
the time of the Virginia trial, and so he did not establish that conditions
have changed which would make it now proper to change the custody of
the child, and, therefore, the order sustaining the writ of habeas corpus
directing that the child be surrendered to the father was improperly
granted.

APPEAL by Hazel Simons Truitt from an order of the
Supreme Court, made at the Dutchess Special Term and entered
in the office of the clerk of the county of Westchester on the
23d day of August, 1920, awarding the custody of the above-
named infant to Myles W. Standish.

*Humphrey J. Lynch* [*William A. Sawyer* with him on the
brief], for the appellant.

*Frederick P. Close* [*Lee Parson Davis* with him on the brief],
for the respondent.

JAYCOX, J.:

The appellant is the maternal aunt of the infant Mary
Elizabeth Standish, whose custody is in controversy in this
proceeding. The relator resides in Detroit, Mich., where he
married Mary Simons November 11, 1914. This marriage
did not prove to be a happy one, and after a few months they
separated. In October, 1915, while they were still separated,
Mary Simons Standish gave birth to the above-mentioned
infant. After the birth of said child the relator contributed
nothing to her support or that of her mother, and in 1917 the
mother of said infant instituted an action for divorce against
the relator in the State of Michigan on the grounds of cruel
and inhuman treatment, non-support and abandonment.
Pending the trial of that action and against relator's opposi-
tion, an order was made directing him to pay one dollar per
day for the support of his wife and child. He was compelled
to pay this sum with difficulty. In November, 1917, a final
decree of divorce was entered in said action, awarding the
custody of the child to the mother and directing the relator to
pay one dollar per day for the purposes above mentioned.

Second Department, May, 1921.          [Vol. 197

Sometime thereafter the divorced wife took up her residence in Norfolk, Va., where she resided until her death, October 3, 1918. During this time the relator evinced no interest in his former wife or their child. He wrote to his former wife just once — to ask her to fill out a questionnaire in relation to the draft, his purpose being to show that he was obliged to contribute to the support of his former wife and child. Shortly prior to her death, Mrs. Standish married one John J. Carr, with whom she resided until she died. It was the mother's wish that her sister, the appellant, should have the custody of her child. Since the death of the mother the child has remained in the custody and control of her aunt and it is conceded that that is in every way a proper home and proper custody for the child. After the death of the mother, on the 10th day of October, 1918, an order was duly made appointing the appellant and John J. Carr guardians of said infant. The jurisdiction of the court and the legality of its action are expressly admitted. Thereafter, the relator went to Virginia and instituted in the Court of Law and Chancery of that State (it is stipulated that this is a court of competent jurisdiction, the same as the Supreme Court of this State) a habeas corpus proceeding to obtain the custody of said child. In obedience to the writ therein, said infant was produced in court and the proceedings duly and legally had therein. All the issues raised were tried and determined and the court made a decree therein wherein it determined " that it is best for the interest of said infant that it remain for the present in the custody and under the control of its aunt, Hazel Simons Truitt." The decree further provides that the father shall have reasonable opportunity of seeing his child. That decree is dated January 21, 1920, and there has been no appeal therefrom or application to modify the same although said decree contains this provision: " It is further ordered that these proceedings remain upon the docket of this Court in order that such further proceedings may be had or orders entered as the change of conditions in the life or requirements of said infant may dictate as best for her interest and welfare." Prior to the beginning of the last-mentioned proceeding the appellant had moved from the State of Virginia to Bronxville, in the State of New York. Apparently in the course of that proceeding the relator learned

of the change of residence of the appellant, and he then came to this State and on the 17th day of May, 1920, instituted this proceeding, a return was made, a traverse filed and the court proceeded to try and determine these questions: a. Whether under her appointment as guardian the appellant had the legal custody of said infant and, if so, could that custody be inquired into and any determination made in this proceeding as to the custody in which the interests of the infant would be best served. b. Were the Virginia habeas corpus proceedings *res adjudicata?* After a trial of these issues a decision was made awarding the custody of the child to the father.

The appellant urges the following reasons why the decree or order herein should be reversed: *First,* " Habeas corpus, being a legal remedy, will not lie to take a child from its legally appointed general guardian." The appellant's contention under this point is that habeas corpus is a legal remedy and in determining to whom the custody of this child shall be awarded the court cannot consider the welfare of the child but must be guided solely by the question of the legal custody, and that, as in this case, the aunt (appellant) has been appointed the guardian of the child, the writ must be dismissed. That the purpose and design of the writ is to relieve from illegal restraint and that there can be no illegal restraint where there is legal custody. The appellant's attorney cites many cases which he claims support his position, but the case upon which he places the most reliance and which apparently most strongly favors his contention is *People* v. *Wilcox* (22 Barb. 178). Quotations are made from this case which unequivocally assert all that appellant claims, but upon an examination of the whole opinion I think that the reason the learned judge did not exercise his chancery powers was not because upon the return of such a writ the court could not exercise equity powers, but because the writ was, in the first instance, returnable before a Supreme Court commissioner and, in the absence of such commissioner, was heard by a justice of the Supreme Court. In the course of his opinion the learned judge said: " I am entirely satisfied that upon this writ I possess no other powers than such as are possessed by a Supreme Court commissioner under the statute, and that

consequently I cannot, without a usurpation of authority, assume or exercise that species of jurisdiction which belongs exclusively to a court of equity."

Another case cited is *People ex rel. Pruyne* v. *Walts* (122 N. Y. 238). In that case (at p. 241) the court, by BROWN, J., said: " This case is very similar in its facts to *In re Welch* (74 N. Y. 299). There, as here, the contest was between the testamentary guardian appointed by the will of the father and those to whose custody the mother had committed the child. There, as here, the Special Term dismissed the writ, without prejudice to further proceedings, for reasons affecting the health and welfare of the child. This court dismissed the appeal, holding that such reasons justified the withholding the custody of the child from its legal guardian, and that the matter was one so purely within the discretion of the Special Term that its conclusions would not be reviewed." This is a clear, unmistakable holding that the court may, in a habeas corpus proceeding, consider the welfare of the child; in other words, exercise equity powers. The appellant, I think, misreads this opinion and interprets it as a dismissal of the proceeding upon legal grounds, with permission to renew for reasons affecting the health and welfare of the child. I do not so construe this opinion. The writ was dismissed for reasons affecting the health and welfare of the child, without prejudice to further proceedings. The Court of Appeals has recently had occasion to examine this question, and in *People ex rel. Riesner* v. *N. Y. N. & C. Hospital* (230 N. Y. 119, 124), by CARDOZO, J., when construing section 486 of the Penal Law, it said: " The writ of habeas corpus was limited in its origin to cases of restraint under color or claim of law ( *N. Y. Foundling Hospital* v. *Gatti*, 203 U. S. 429, 438; *People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238, 241). In time, however, it was extended to controversies touching the custody of children, which were governed, not so much by considerations of strictly legal rights, as by those of expediency and equity and, above all, the interests of the child [ *N. Y. Foundling Hospital* v. *Gatti; People ex rel. Pruyne* v. *Walts; Matter of Knowack*, 158 N. Y. 482; *Matter of Waldron*, 13 Johns. 418; *The Queen* v. *Gyngall*, 1893, 2 Q. B. 232]. We find in this statute no suggestion of a purpose, if we were to assume that

there was power (N. Y. Constitution, art. 1, sec. 4), to abridge the function of the writ in this field of its extension." In that case the removal of a child from legal to other custody for the benefit of the child was approved. I think, therefore, that the law is firmly established that upon the return of a writ of habeas corpus the court can exercise equity powers and make a decision dependent not alone upon the question of legal custody but based, as stated above, upon the grounds of expediency and equity and, above all, the interests of the child.

That brings us, then, to the determination of the question as to whether the decree of the Court of Law and Chancery of the State of Virginia awarding the custody of the child to its general guardian, the appellant herein, is *res adjudicata.* That proceeding, as recited above, was a proceeding exactly like this, instituted in a court of competent jurisdiction, having unquestionable jurisdiction of the proceeding and of the parties, and in it it was determined that the best interests of the child required her to remain in the custody of her aunt. The courts of this State have held that a decree or final order in a habeas corpus proceeding is an adjudication which may be pleaded as *res adjudicata.* (*Mercein* v. *People,* 25 Wend. 64; *Matter of Price,* 12 Hun, 508, 511; *People ex rel. Keator* v. *Moss,* 6 App. Div. 421; *Matter of Quinn,* 2 id. 103, 104; *People ex rel. Ludden* v. *Winston,* 34 Misc. Rep. 21; affd., 61 App. Div. 614; *Matter of Lederer,* 38 Misc. Rep. 668; *People ex rel. Multer* v. *Multer,* 107 id. 58; *People ex rel. Lawrence* v. *Brady,* 56 N. Y. 182; *Matter of Lee,* 220 id. 532, 538.) In *Mercein* v. *People (supra)* the court held: "An adjudication of a court of record or of an officer having authority to act in the matter on the question of the custody of an infant child brought up on habeas corpus, may be pleaded as *res adjudicata,* and is conclusive upon the same parties in all future controversies relating to the same matter, and upon the same state of facts." Under the Constitution of the United States, "Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State" (U. S. Const., art. 4, § 1); and they shall have such effect in any court within the United States as they have, by law or usage, in the courts of the State from which they are taken. (See

Act Cong. May 26, 1790, being 1 U. S. Stat. at Large, 122, chap. 11; now U. S. R. S. § 905.)

I think there is no force in the respondent's contention that there was a lack of jurisdiction, or that the proceedings were deprived of their conclusive character by the fact that the appellant was not then a resident of Virginia and her appearance voluntary. Neither can the binding force of that decision be in any degree mitigated by claiming that the proceeding was not well tried. There was no occasion for the appellant to prove the law of the State of Virginia. In the absence of proof to the contrary, it is assumed to be the same as our own. (*Monroe* v. *Douglass*, 5 N. Y. 447; *Mount* v. *Tuttle*, 183 id. 358.)

The cases cited by the respondent are not applicable. They are cases where the infant was not before the court, or the appointment of a guardian made where the infant was brought into the jurisdiction of the court by trickery, such as *Matter of Hubbard* (82 N. Y. 90); *People ex rel. Winston* v. *Winston* (31 App. Div. 121). After citing these cases respondent says in his brief: " So in the case at bar, while the Virginia court obtained jurisdiction, it should never have entertained jurisdiction, as the infant was a resident of New York." We, of course, are not called upon to pass upon the propriety of the action of a court of a foreign State. If with jurisdiction it has acted, that action is binding upon us. The Special Term avoided the conclusive character of this action by holding that its determination was not final. The determination of the court was, " the Court is of the opinion that it is best for the interest of said infant that it remain for the present in the custody and under the control of its aunt, Hazel Simons Truitt." That was a final determination. It finally determined the question then before it, but recognized the fact that as the child grew older a different custody might be desirable; that the circumstances of the parties might change. It perhaps was an unnecessary precaution. It reserved the right to the court to change the custody of the child when the situation of the parties made such change desirable. It merely stated what the court undoubtedly had the power to do without any such reservation. Therefore, to justify this proceeding, the relator must show that there had

been a change of conditions so as to make the previous decision no longer applicable. In *Mercein* v. *People* (25 Wend. 64), at page 99, it is said: "According to adjudged cases, the proceedings before the chancellor were a bar to any re-investigation of any matters which occurred previous to the date of his final order. Such unhappy controversies as these may endure until the entire impoverishment or the death of the parties, renders their farther continuance impracticable. If a final adjudication upon a habeas corpus is not to be deemed *res adjudicata*, the consequences will be lamentable. This favored writ will become an engine of oppression, instead of the writ of liberty. An examination of the cases on this subject will show that the general rule laid down by Chief Justice DE GREY, in the case of the *Duchess of Kingston*, 11 State Trials, 261, as to the conclusiveness of a judgment of concurrent or exclusive jurisdiction upon the same matters between the same parties, is applicable to all final adjudications upon a habeas corpus."

The petition is barren of any allegation, there is no proof and the court does not find that the appellant is not as competent and is not in every way just as well fitted to care for this child at the time of this trial as she was at the time of the former trial. The court merely disagreed with the Virginia court as to in whose custody the best interests of the infant required her to be placed. The decision of the Virginia court must be deemed *res adjudicata* of the questions involved in this proceeding.

The order herein awarding the custody of the child to the relator should be reversed and the proceeding dismissed.

BLACKMAR, P. J., MILLS, RICH and PUTNAM, JJ., concur.

Order awarding custody of the child to relator reversed, and proceeding dismissed.