THE PEOPLE OF THE STATE OF NEW YORK ex rel. RUBY ELIZABETH JONES, Respondent, *v.* ROY J. JOHNSON, Appellant.

Fourth Department, May 2, 1923.

**Parent and child — habeas corpus by mother to secure possession of child from father — mother was awarded custody by Florida decree of divorce — child has been resident of this State for about one year — mother has been guilty of immoral conduct since divorce granted — custody withheld from mother.**

In habeas corpus proceedings by a mother to secure possession of her child from the father, the relief will be denied and the custody of the child withheld from her, where it appears that though the custody of the child was awarded to the mother by a Florida decree of divorce, the mother has since been guilty of immoral conduct, showing her to be morally unfit to have the charge and custody of the child, a girl of about eight years of age, and that the father is both morally and financially a fit and proper person to have the care and custody of his daughter who herself has expressed a wish to remain with her father.

APPEAL by the defendant, Roy J. Johnson, from an order of the Supreme Court in a habeas corpus proceeding, made at the Steuben Special Term and entered in the office of the clerk of the county of Steuben on the 11th day of September, 1922, awarding the custody of an infant daughter of the parties to the relator.

*Delmar M. Darrin [John W. Hollis* of counsel], for the appellant.

*Rogers & McManus [Thomas F. Rogers* of counsel], for the respondent.

CLARK, J.:

This is a habeas corpus proceeding instituted by the mother of Glenn Esther Johnson, a girl eight years of age, against the father for the custody of said child.

The respondent in the proceeding, who is the appellant here, formerly lived in Addison, Steuben county, N. Y. Some years ago because of impaired health he went to the State of Florida to reside, and there met and married the relator on the 3d day of May, 1910. The parties lived together as husband and wife at Tampa until the month of March, 1921, when appellant purchased a small farm at Ocala, Fla., and moved there for a temporary residence in the hope of regaining his health, which was somewhat shattered.

At that time appellant owned a commodious residence at Tampa, heavily incumbered, and relator was conducting a rooming house, and she refused to go with her husband even for a temporary residence at Ocala.

Subsequently and in the month of July, 1921, relator went to Ocala to see her husband, but refused to remain there, and returned to Tampa and later went to Miami, where her father then resided.

Prior to this time and when the parties were living together at Tampa, appellant had found in his wife's possession letters from several gentlemen, including a Mexican, an Englishman and a sea captain, which letters indicated that the wife was very friendly with these men.

The parties continued to correspond at intervals and appellant sent his wife money frequently until in February, 1922, when he went to Miami to see relator, and there found her in the employ of one George D. Jones, who conducted a tourist business in Miami, and who at that time was living at the house of relator's parents, where she was also residing.

The relations between Jones and relator were at this time not only friendly, but very intimate, and he proposed to appellant that he permit his wife to get a divorce, offering substantial inducements if appellant would consent to such an arrangement, which he refused to do. The evident purpose of Jones in making this proposition was to clear the way for him to marry relator after she had gotten rid of respondent in the divorce court.

Later in the month of February, 1922, relator began an action for divorce against her husband in Dade county, Fla., on the alleged ground of cruelty.

Appellant employed counsel and made arrangements to defend the action, and actually put in an answer, which, during his absence on a visit to the home of his parents at Addison, N. Y., with his little daughter, the court struck out on a technicality, and relator obtained a divorce on the 17th day of April, 1922, by default, and in and by the decree she was awarded the custody of their minor child, the said Glenn Esther Johnson.

After obtaining this decree of divorce relator, in company with her employer, George D. Jones, started for Addison for the purpose of getting possession of her child. The little girl was at that time visiting her grandparents, the father and mother of appellant, at Addison, who were people of refinement and good standing in the community where they lived, and she was attending school there at that time.

Relator and Jones were not successful in getting possession of the little girl, whereupon she instituted this habeas corpus proceeding with the view of getting the control and custody of her child.

The writ was obtained and served on appellant and he made

return thereto in which he alleged that relator was morally unfit to have the care and custody of their little girl, for the reason that at various times when she was still the wife of appellant she sustained improper relations with divers men and that particularly after she had obtained the decree of divorce in Florida she sustained improper relations with her employer, George D. Jones, before her marriage to said Jones.

By the proceedings an issue was raised as to which one of the parties was a proper custodian for the child, and the court sent the question to a referee to take proof. This proceeding was proper, although the form of the order might not have been quite proper. (*People ex rel. Keator* v. *Moss*, 6 App. Div. 414.)

Much evidence was taken before the referee, and he finally made a report to the Supreme Court with findings wherein, among other things, he found that relator was a suitable person to have the custody of Glenn Esther Johnson, and recommended that she be awarded such custody, and an order was granted on the 8th day of September, 1922, awarding the custody of said infant to the relator.

At the hearing before the referee much evidence was taken bearing on the question which of the parties was a suitable and proper person to have the custody of this minor child, and it was clearly shown that when relator came to the State of New York in company with her employer Jones, after she had obtained her Florida divorce, she sustained improper relations with him at divers times and places, and particularly at a hotel in the city of Corning. The evidence showed clearly that relator was morally unfit to have the care of a young girl, while it was equally clearly established by the evidence that appellant, the father, is a man of good habits, good reputation and both morally and financially a fit and proper person to have the care, custody and control of his little daughter.

The question arises as to whether the provisions of the Florida divorce awarding the custody of this child to the relator are conclusive, and that the provisions of the Federal Constitution (Art. 4, § 1) giving full faith and credit to the judicial proceedings of other States, preclude this court from inquiring into what is best under the circumstances for the personal and moral welfare of this child, who is now and has been since the spring of 1922 within the State of New York, and for the purposes of this proceeding at least is a resident of this State. (*Matter of Hubbard*, 82 N. Y. 90; *Kennedy* v. *Ryall*, 67 id. 379, 387.)

Since the decree was obtained by relator in Florida awarding to her the custody of this minor child there has been a change in her status. She married her employer in the spring of 1922, after

their unsuccessful efforts to obtain the little girl in Addison, but before said marriage she had sustained improper relations with said Jones, and that in and of itself would show that she was morally unfit to have charge of the training, nurture and care of the little girl.

The State is interested to protect the child, and the foreign divorce ought not to preclude the courts of this State from protecting a child from the influence of a mother whose actions since her divorce was obtained show her to be unfit to care for and rear a young girl. (*Matter of Stewart,* 77 Misc. Rep. 524; *Matter of Tierney,* 128 App. Div. 835.)

The Supreme Court of this State, as the guardian of all infants within its jurisdiction, has inherent power in a proper case to take the custody of a child from either of its parents, if such a course is for the best interests of the child. (*Wilcox* v. *Wilcox,* 14 N. Y. 575; *Matter of Lee,* 220 id. 532; *People* v. *Dewey,* 23 Misc. Rep. 267.)

It is the duty of the court in a proceeding involving the care and custody of a child to look solely to its welfare. (*People ex rel. Pruyne* v. *Walts,* 122 N. Y. 238; *Matter of Standish,* 197 App. Div. 176.)

The Florida divorce obtained by relator was based on facts then existing and brought to the attention of the court, and the awarding of the custody of the child to the relator was undoubtedly based on the idea that she was a person fit to have such custody, and that her conduct in the future would be exemplary. If since that decree was obtained, as was established by the evidence here, she has conducted herself in such a way as to show her morally unfit to care for a little girl of tender years, then the court, whose jurisdiction she invoked to get possession of the child, has a right to act on the facts brought out at the hearing in her proceeding, and be governed accordingly.

At common law the father had the prior right to the custody of his children. However much that doctrine may have been modified by the Domestic Relations Law and its antecedent statutes, the primary consideration in all such cases is the welfare of the child, and if the custody is to be awarded to either parent, it should be to that one who is shown by the evidence to be best fitted, both morally and otherwise, to assume the responsibility of properly caring for the child. (*Ullman* v. *Ullman,* 151 App. Div. 419.)

In the present case, in view of the life led by relator, and particularly as shown by her relations with Jones after her Florida divorce was obtained, and before her remarriage, and in view of the expressed wish of the little girl not to be compelled to return to

13

an association with Jones, I am of the opinion that the welfare of this child requires that her custody be withheld from the relator.

All concur.

Order reversed, with costs, and writ of habeas corpus dismissed, with costs. Findings numbers 3, 4, 5, 6 and 7 disapproved and reversed. New findings to be made in accordance with the opinion. Settle order including new findings before CLARK, J., on two days' notice.