THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROSE PASCALE, Relator; *v.* VITO LANZA and Others, Respondents.

Supreme Court, Special Term, Queens County, March 1, 1938.

*Morris Goldstein,* for the relator.

*Harold St. L. O'Dougherty,* for the respondents.

KADIEN, J.  The relator, the mother of Sebastian Pascale, Jr., an infant twelve and a half years of age, has procured a writ of habeas corpus for the purpose of obtaining his custody from the respondents, who, it is claimed, are detaining him at their home in violation of her express wishes.

The circumstances under which the respondents obtained the custody of the infant are as follows:

Some time in 1926 the relator became very ill, suffering from a serious ailment.  For a period of about six months she was confined to a sanitarium, and thereafter in 1929 upon the recurrence of her malady, she was confined to Bellevue Hospital and subsequently at another sanitarium.

In July, 1926, when Sebastian was some ten months old, and while his mother was confined in the sanitarium as aforesaid, his father, now deceased, delivered the child to his sister, Feliciana Lanza, who was the mother of the respondents.  Since that time the child has been continuously in the sole care, custody and control of the respondents and their mother, who passed away in October, 1936, except that when two years of age he was taken to the home of the

relator's brother in the State of Rhode Island, for a short period, and also immediately subsequent to his father's death on January 5, 1938, when he stayed in his mother's home for a period of approximately ten days. He had, however, been a frequent visitor at her home, and during the last few years often spent week ends with her.

It is claimed by the relator that the placing of the boy with the Lanza family was but a temporary arrangement; that frequently she made her desire for his return known to Mrs. Lanza and the respondents; and that the only reason the child remained was because Mrs. Lanza had become so attached to him that she would become ill at the mere thought of his leaving her.

The respondents, however, claim that the child had been reared and cared for in their home as a member of their family; that the relator and her husband had, since the delivery of the child to them, relinquished all future liability and responsibility for his care, education and maintenance; and that it was understood and agreed that the child would live with and become a member of the respondents' family.

It seems to the court upon a consideration of the evidence, that the proof in support of the respondents' version of the transaction preponderates. That version is more consistent with the probability of truth, when considered in the light of all the facts and circumstances in evidence, than is that of the relator. For more than eleven years the boy has been with the respondents and their mother. He has become attached to his present environment; indeed, he has become a member of the family in the truest sense; the respondents have concerned themselves and assumed the exclusive responsibility for his upbringing and welfare. It is, therefore, strange that, twenty days after the death of the boy's father, the extreme step of suddenly cutting off this relationship through recourse to a court proceeding, should be attempted.

The answer to this may well be that the relator, personally, is not averse to having the boy continue in the custody of the respondents, as at present, but had been instigated to institute this proceeding by others. Certainly there is ample evidence to sustain this conclusion. An attendance officer of the board of education testified concerning an interview with the relator, who had stated that she was satisfied to have the boy remain in Queens (with the respondents) until his graduation, if Dr. Pascale, her brother-in-law, approved. The officer thereupon interviewed the doctor and was told that the boy must be given to his mother. The relator's own brother testified that she had stated to him that Dr. Pascale and his brother Peter were pestering her about taking the boy home; that she was in their hands and would have to do what they tell her. It is significant

that these two gentlemen are the sole support of the relator and her three older children, none of whom is gainfully employed.

The right of a parent " to the custody of the child is superior to that of collateral relatives." (*People ex rel. Hausler* v. *Stegmeyer*, 240 App. Div. 901; *People ex rel. Boulware* v. *Martens*, 232 id. 258; affd., 258 N. Y. 534.) But it seems that this principle is applied only in cases where all things are equal. It must give way to the equally well-established rule of law that the welfare of the child is superior to the claim of the parent, and that it is the duty of the court, in a proceeding of this nature, to look solely to the child's welfare. (*People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238; *Matter of Standish*, 197 App. Div. 176.) As said in *Matter of Gustow* (220 N. Y. 373, 377): " While the parent ordinarily is entitled to the custody of a child, the welfare of the child may be superior to the claim of the parent. (*Matter of Hartman*, 38 Hun, 644, without opinion; opinion reported in 23 N. Y. Wkly. Dig. 128; *Matter of Watson*, 10 Abb. [N. C.] 215; *Matter of Cuneen*, 17 How. Pr. 516; *People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238, 241; *Wilcox* v. *Wilcox*, 14 N. Y. 575; approved, *Matter of Knowack*, 158 N. Y. 482, 490.) "

The relator resides with her three children, aged approximately eighteen, seventeen and fifteen respectively, in a crowded section of the borough of Manhattan, where she occupies five rooms in a four-family apartment house.

The respondents, on the other hand, live together in a private home consisting of eleven rooms. During the summer they reside in a private home in Neponsit, Rockaway Beach, N. Y. The oldest sister, Lucy Lanza, runs the household, assisted by a maid, and always remains at home. One of the respondents is in the real estate business, another is a physician, a third a dentist, a fourth a lawyer, and a fifth a school teacher. All earn substantial incomes. All are devoted to the child, and are capable and willing to maintain and support him. In fact they have set up trust funds and have planned a college career for him. They have demonstrated by evidence that is clear and convincing that they bear great affection for him and can give him advantages both for the present and the future far beyond those which the mother can possibly afford.

The boy is at an age when he can understand and think for himself. In addition, he is unusually bright and developed. He is in class 8A-1 in the public school in the neighborhood of the respondents' home. He must be regarded as an individual and not merely as a pawn in this controversy. His welfare is, in the last analysis, the paramount consideration in reaching a determination of who shall have his custody. His own wishes may not be ignored. Both in his testimony in open court and in his interview with the court in

Chambers, he definitely stated that he desires to remain with the respondents, whom he regards as his own brothers and sisters; and that while he likes his mother, his sisters and his brother, he feels strange in their company, and would be unhappy if compelled to leave the respondents.

The court cannot be indifferent to the boy's wishes; it would be cruel to tear him away from the only home he ever knew. Who knows what irreparable injury may be done were he to be taken away from those to whom he has been so closely attached. It may well be that an unhappy situation would thereby be created, similar to that which recently received wide notoriety in the newspapers. In that case a twelve-year-old boy, who had for many years lived with his father, was by judicial decree of another State placed in the custody of his mother residing in this city, *against his wishes.* Unhappy in his new surroundings, he frequently ran away. Finally, the Children's Court in the borough of Brooklyn assumed jurisdiction, with the result that the boy was returned to his old home, subject only to stated visitations at the home of his mother.

In the instant case the boy has shown similar propensities. While at the home of his mother, after his father's passing, he returned to the respondents, and when compelled to go back and attend a school in the neighborhood of his mother's residence, he nevertheless secretly attended his old school by rising early and taking the train to Astoria, Queens county, where that school was located.

The evidence is clear that the boy has not been kept away from his mother and family. On the contrary, his visits to them have been frequent, and encouraged by the respondents. During the summer season his mother, sisters and brother have been frequent visitors at the home of the respondents in Neponsit, Rockaway Beach. His brother spent two full months with him at that resort during the last summer vacation.

Under the circumstances present herein, the court is of the opinion that the interests and welfare of the child will be served best if he is permitted to remain where he is now. It is apparent that his affections and attachments are centered in the respondents. Perhaps, when the boy becomes older, and if the mother uses the discretion and judgment which she should use, instead of invoking the stern aid of the court, the boy may change his mind. For the present he should visit his mother, as heretofore. The court is confident, in light of the past conduct of the respondents, that no impediment will be placed in the way of the relator's winning the boy's confidence and love.

Accordingly, the petition will be dismissed, without costs, and the infant, Sebastian Pascale, Jr., will remain in the care, custody and

control of the respondents. He may visit his mother on week ends, as heretofore. Further visitation on holidays may be arranged between the parties, and if that cannot be effected, application therefor may be made to the court. Settle order on notice.