THE PEOPLE OF THE STATE OF NEW YORK ex rel. CRESCENT A. RAGONA, Relator, against MARIE M. DE SAINT-CYR, Defendant. In the Matter of MARIE M. DE SAINT-CYR, Petitioner, against CRESCENT A. RAGONA, Respondent.

Supreme Court, Special Term, New York County, January 11, 1955.

*Samuel H. Goldman* for relator and respondent.

*Dickler & Gates* for defendant and petitioner.

FRANK, J. A writ of habeas corpus issued out of this court on the application of Crescent A. Ragona, seeking custody of his infant son, Roger, as against the defendant, the mother of said infant. By order to show cause she too seeks custody of the child. Both proceedings were consolidated by court order.

The parties were married in Rome in 1946, while the husband was a member of the armed services. The wife was a French national. It was the first marriage for the husband, the second for the wife. Upon their arrival in this country they lived for two years with the husband's parents.

In 1949, the husband bought a house in Valley Stream. The child, Roger, was born there on July 27, 1949. The family continued to reside together until September 11, 1950, when Ragona was recalled to Army service. Thereafter, without the consent of the husband, the wife engaged a maid to take care of the child. She asserts that this step was necessary to enable her to obtain employment so that she could support herself and the child. It is the husband's contention that a maid was engaged to leave the wife free to be entertained by unknown males. I find that the husband supplied her with a regular allowance and allotment adequate for her needs during the time that he was in the service and that the wife left the child in the care of the maid and took weekend jaunts to various places away from home. I find that on a number

of these occasions, she was accompanied by a man who has not been otherwise identified. I find that she took trips to Bermuda, to Guatemala, to Mexico and one to Europe in 1954.

It is the fact and I so find that on September 9, 1952, the wife was registered under the name of Mary Madeline de Saint-Cyr at the Park East Hospital for treatment for an incomplete abortion. Upon her admission she signed a consent to an operation under that name. When discharged, she went to the Hotel Langham, where Mr. Saint-Cyr resided.

I find that in February, 1953, she abandoned her husband and child and went to live in an apartment on 58th Street, Manhattan, then occupied by Saint-Cyr.

When Ragona discovered that his wife's hospital confinement had been under the name of her paramour and that she was residing with Saint-Cyr, he announced his intention to commence an action for divorce in this State upon the ground of adultery. Thereafter, to avoid charging the mother of his child with the commission of adulterous acts, Ragona agreed to file for a divorce in another jurisdiction.

Prior to the issuance of a decree of divorce in the State of Alabama, the parties executed a separation agreement. By its terms, the wife granted sole custody of the child to the father and, in addition thereto, sole control and supervision of his upbringing, subject to consultation with her concerning his health, education and general welfare. This agreement, which provided for the right of daily visitation by the wife, was incorporated in the decree of divorce, dated September 10, 1953.

The wife was represented by counsel who witnessed the execution of the separation agreement. She now contends that she engaged him for the sole purpose of acting as a witness. The evidence does not sustain her position. I find that the wife selected her own attorney, who participated in conferences with the wife, her husband and his counsel; that the various terms to be contained in the agreement were discussed. At least one draft of the agreement was prepared and after it was studied by the wife's counsel, he proposed changes in it. It is significant that in all these suggested changes there was not a single one concerning the provision for sole custody of the child in the father. The agreement in final form was executed by each of the parties separately, in the presence of their respective attorneys, and every sheet was initialed by each of the parties.

The present contention of the wife, that she was not fully cognizant of the significance of the provision for sole custody

in the father, I find to be without merit. The court is not unalterably bound by the separation agreement or by the foreign decree awarding sole custody of the infant to the father (*People ex rel. Jones* v. *Johnson,* 205 App. Div. 190, 193). The provision, however, should be weighed with the other evidence presented and accorded such consideration as is deemed justified by the proof (*Mandel* v. *Mandel,* 80 N. Y. S. 2d 95; *Matter of Young* v. *Roe,* 265 App. Div. 858, affd. 290 N. Y. 823).

After abandoning her husband and child in February, 1953, the wife continued in a meretricious relationship with Saint-Cyr until April, 1954, when they were married. During all of this time, the child remained in the father's custody in the Valley Stream home, apparently happy, healthy and properly maintained.

In June, 1954, Ragona remarried and about the same time was recalled for a short tour of Army duty. He suggested to Mrs. Saint-Cyr that she could have Roger for the duration of his service. She consented to that arrangement. Upon his release, Ragona requested Roger's return to him. The defendant refused. The father has never since been able to regain custody.

There can be no doubt that the relator loves his child and can provide him with suitable surroundings. Even the mother is forced to admit that Ragona was a good and devoted father.

It is evident that Mrs. Saint-Cyr's change in attitude with respect to custody is linked with her resentment at the remarriage of her former husband and her determination to prevent the child's having any contact with the husband's present wife. Her position is somewhat incomprehensible, especially in view of her own remarriage. She apparently feels that it is all right for the child to be living with her and her husband but all wrong for him to be with the father and his wife.

The present Mrs. Ragona testified at one of the hearings. She appears to be devoted to the relator and an intelligent, well-mannered woman, fully competent to assist in the care of the child with sympathy, understanding and affection. Ragona maintains an attractive house, with ample grounds, in Albertson, L. I., in the vicinity of good schools.

I have talked to the child on at least two occasions. I am satisfied that the mother subjected Roger to pressures, insidious and subtle, if not patent, so that he displays an anxiety rising to hysteria when removed from her presence. I find that there has been a studied attempt to instill a hostility in the child towards his father.

At a conference in chambers, it was agreed that the father have the child for weekends during August and September. Upon my earnest plea, the mother promised to co-operate, so that the child's tension might be relieved. She did not keep her promise. To avoid intensifying the child's hysteria, the father surrendered his right under the stipulation to have week-end custody. On one occasion the court arranged for the parties to meet in chambers to enable the father to take his son home. So disturbed was the child, that Ragona, to avoid increasing the boy's distress, consented that he remain with the mother.

On the only occasion when the father did take him for the weekend, the mother sent the child a note attached to a toy. She made numerous telephone calls, insisting upon talking to the child. This interference upset him emotionally. I believe it was all a deliberate design to agitate the child and to force Ragona to surrender custody. For the purpose of easing the child's tensions for these weekend visits with the father, the court recommended that the parties consult a psychiatrist. They did so, without, however, informing the psychiatrist of the purpose of the consultation. The doctor's lack of information prevented his testimony from being as helpful to a solution as it might otherwise have been.

Contrary to all concepts of motherhood, Mrs. Saint-Cyr has exercised a baleful influence over her child, which if continued may bring frightful consequences. Her professions of love and concern for the welfare of her child are probably true. Nevertheless, she did leave the child in the care of untrained housemaids while she was off on weekend jaunts and at times she even utilized the services of a person known to her as a sex pervert to " baby sit ".

While it is the recognized intent of the law that a child not be deprived of his mother's care if she is a proper and fit parent, it would be equally unfair to Roger if he were denied the care, affection and guidance of a devoted father.

Another problem of grave concern is the declared intention of Mrs. Saint-Cyr to take her son to France next summer. No convincing assurance has been given this court that once removed from this jurisdiction, he will ever be returned. The present husband of the defendant is a French citizen employed in the export business by a French firm. He has lived and worked in various countries throughout the world and for all we know there is nothing that would require his return to this country once he left. It would be a gross injustice to Ragona

to permit a situation that might prevent him from ever seeing his son. (*Matter of Whittemore* v. *Whittemore,* 202 Misc. 175; *Miller* v. *Miller,* N. Y. L. J., March 23, 1954, p. 7, col. 3.)

One act of adultery or a series of adulterous acts with the same man may not completely impair a mother's fitness to rear her child. But such an assumption does not justify stripping the father, whose conduct has been without fault, of the custody of his child.

The discretion vested in the court with respect to custody should not be exercised sentimentally in favor of a mother, nor is it uncontrolled. It must have sound and substantial support in the proof (*Bunim* v. *Bunim,* 298 N. Y. 391). For the present, divided custody between the parents seems to be impossible of accomplishment. Under the circumstances, the father, in my opinion, is by every test of morals, temperament and devotion to the best interests of the infant, the more fit custodian. He must be given the opportunity to regain the trust and affection of his child.

The writ of habeas corpus is, therefore, sustained. The cross motion by the mother for custody of the child is denied, without prejudice to a new application after a lapse of a reasonable period of time if she is so advised. If the parties can agree upon visitation rights, they may so stipulate. If they cannot, the visitation rights will be fixed in the order to be settled on notice.