Thomas A. Aurelio, J.
Petitioner, by writ of habeas corpus, brings on this proceeding to regain custody of an infant she and her husband, now deceased, adopted in Pennsylvania, their home State. Respondent is the natural mother of the infant and a sister of petitioner. It appears that shortly before the infant, Sharon Ann, was born on February 4, 1949, respondent mother returned to her mother’s home in Pennsylvania to give birth there, because a short-lived affair which she had with a man in New York resulted in a void marriage, which was soon thereafter annulled.
Petitioner claims that the infant was placed in her care when she was about 3% weeks old at the suggestion of her mother, the mother of petitioner and respondent, because, as she testified before the Orphans’ Court of Luzerne County, Pennsylvania, on the hearing for the adoption, “ My sister said she was going to take the child to New York and put her away in a home. Mother and I couldn’t see that, so my mother told me to take the baby.” Petitioner also claims that she and the family did not hear from or know the whereabouts of respondent until about the Fall of 1953, several months after the adoption order dated May 7, 1953 was made, when respondent came to petitioner’s home in Pennsylvania to visit the infant.
*86 Oil the other hand, respondent contends that after the birth of the child she found it necessary to seek employment and go to New York to obtain work, and that her sister, petitioner, volunteered to take care of the infant until she could make provision for her; and that on every birthday of the infant and on every holiday, Easter and Christmas and during the Summer months she never failed to visit the infant before and after the adoption; and that she made some payments to petitioner and brought clothes, toys and other gifts for her.
She testified that neither petitioner nor anyone else at any time informed her that the infant had been adopted by petitioner and her husband until a few days before this proceeding' was commenced, when, in a telephone conversation, respondent told petitioner that the infant wanted to remain in New York with respondent. It was then that petitioner revealed to respondent that the infant had been adopted and insisted upon her return to Pennsylvania.
Petitioner admits that she did not inform nor reveal to respondent that the infant had been adopted until a few days before this proceeding was commenced, notwithstanding, admittedly, that respondent, at least as far back as the Fall of 1953, as petitioner herself testified a few months after the adoption, visited the infant and thereafter made numerous other visits during the following years, when respondent even had taken the infant to New York during the Summer months from time to time without objection from petitioner.
Thus it appears that petitioner kept the adoption secret from her sister, under circumstances which cast grave doubts on the question of whether petitioner was unaware of respondent’s whereabouts, as she claims. This is confirmed by an answer she gave to the Judge who presided at the hearing on the petition for adoption held on April 27, 1953, in Orphans’ Court, Lucerne County, Pennsylvania. On page 3 of the testimony given by petitioner, she was asked: ‘1 Did you ask her to consent to this adoption? A. No, she knows we like the child — we felt she maybe Avouldn’t give us the child.”
The infant, who soon will be 13 years of age, a well-developed girl, has expressed the sincere desire to live with her mother and her mother’s husband in Noav York. She is noAv attending St. Clare’s Academy at Hastings-on-the-Hudson, New York, where the annual tuition of $950, the first quarter of which has been paid. The infant is alloAved to come home on week ends. She has reached an age of discernment and understanding and her Avish in the matter merits the court’s consideration. Respondent is now happily married to her present husband, *87 and both are gainfully employed and will be able to continue the education of the infant and to rear her from now on.
It is apparent that respondent left her infant child with a sister at her mother’s suggestion while she readjusted herself; and petitioner and her husband willingly undertook to care for the baby, undoubtedly out of love and affection both for the infant and the mother, a' sister of petitioner.
In Matter of Standish (197 App. Div. 176) at page 181, Jaycox, J., stated: “ I think, therefore, that the law is firmly established that upon the return of a writ of habeas corpus the court can exercise equity powers and make a decision dependent not alone upon the question of legal custody but based, as stated above, upon the grounds of expediency and equity and, above all, the interests of the child.” The court relied on People ex rel. Riesner v. New York Nursery & Child’s Hosp. (230 N. Y. 119, 124) wherein Cardozo, J., stated: “ The writ of habeas corpus was limited in its origin to cases of restraint under color or claim of law [citing cases]. In time, however, it was extended to controversies touching the custody of children, which were governed, not so much by considerations of strictly legal rights, as by those of expediency and equity and, above all, the interests of the child [citing cases].”
Notwithstanding the adoption order of the Pennsylvania court, I conclude, in the circumstances here involved, that this court should not hestitate to exercise its broad equity powers. Upon the entire record I find and decide that the respondent is a fit and proper person to have the care and custody of her daughter, and that it will be in the best interests of the welfare of this girl to be reared by her natural mother from this stage on. The writ is dismissed and the application denied.