MARTIN C. ANSORGE, Respondent, *v.* ALBERT P. ARMOUR,
Appellant.

(Argued May 2, 1935; decided May 22, 1935.)

*Harold H. Levin* for appellant.

*Millard H. Ellison* for respondent.

CRANE, Ch. J. The defendant and Margaret Cleverley Armour were married in 1921. A daughter, Shirley, was born of the marriage in 1927. On July 2, 1931, the couple entered into a separation agreement, a formal document, which read in part as follows:

" AGREEMENT made July 2nd, 1931, between Albert P. Armour, of Forest Hills, New York City, hereinafter called ' First Party;' and Margaret C. Armour, his wife, of the same place, hereinafter called ' Second Party.'

" WITNESSETH:

" WHEREAS, the parties hereto intermarried on the 26th day of April, 1921, and are the parents of a child known as Shirley Elizabeth Armour, born on the 9th day of February, 1927; and

" WHEREAS, the parties hereto are not now living together as man and wife; and

" WHEREAS, it is mutually desired between the parties to provide for the custody and care and education of their said child, Shirley, during her infancy; and

" WHEREAS, it is also the desire of the parties to finally settle and determine the property rights between the parties hereto and for a reasonable provision for the support and maintenance of the second party, past, present and for the future, as hereinafter provided;

" *Now, Therefore,* in consideration of the premises and other valuable consideration, it is hereby mutually agreed as follows:

\*       \*       \*       \*       \*       \*       \*

" *Third.* It is hereby mutually covenanted and agreed that the independent custody, control and education of the said daughter, Shirley, of the parties hereto, shall be and is hereby given to the party of the first part, who shall be responsible and liable for the adequate support, maintenance and education of said child consistent with the financial means, environment and mode of living of the said first party which is now mutually admitted by the parties hereto to be an atmosphere of recognized wealth and with cultural surroundings. It is further mutually agreed, however, that the party of the second part may have the custody of the said child, Shirley, during such week-ends after school sessions from Friday until Sunday evening in each week from time to time as may be arranged between the parties hereto, both parties at all times, however, agreeing that any temporary environal change in the said child's custody shall first be considered not solely from the wishes of the parties hereto, but for the benefit of the said child, as regards her health, temperament, character and general welfare. The parties further agree that there shall be no excuse, failure, refusal or neglect to so deliver the custody of the said child or return her from one party to the other in accordance with the terms of this agreement, except sickness of such child, which shall be certified to in detail by

the attending physician upon request of either party; and each party shall have the right to visit the said child while in the custody of the other at any time while said child is confined to bed because of illness; and each party shall have the right after consultation with the other, looking towards the best interests of said child, to have the child examined by a physician of such party's own selection; provided, however, if the second party shall retain a physician to examine from time to time said child during such illness and another physician has been retained by the first party and is attending said child, then and in that event, the second party shall pay for the services of said physician so hired by her and any medicine or therapeutic agencies purchased or supplied for said child on the recommendation of such physician, when requested by the first party. Each party shall at the time of the execution of this agreement, give to the other party in writing the address of their place of residence and shall cause prompt notice in writing to be personally delivered or sent by registered mail to the other party of any change in residence, giving the address of such new place of residence. When the said child is taken from the said usual place of residence of the second party by the second party for the week-end periods designated herein, or for any other longer periods which may be hereafter mutually consented to by the parties hereto, the said child shall not be absent therefrom for more than three consecutive days without notice being given to the first party, nor shall the first party allow said child while in his custody to be away from his place of residence as stated herein, unless at boarding school, for more than four days without giving notice to the second party of the whereabouts of said child. In no event shall said child be removed by either party from the State of New York, unless on a yachting trip in a vessel owned by the first party, on which he shall be present, without the

consent of the other party, for a period of more than forty-eight hours.

"*Fourth.* The first party agrees that he will at all times suitably provide for the adequate support and make ample and adequate provision for his said child, Shirley, either in a Last Will and Testament to be duly executed by him, or in a Trust Agreement and further, that in the event he should hereafter marry any other woman than the second party, that he will by his Last Will and Testament duly executed, or by Trust Agreement or otherwise, duly provide for the support, education of his said daughter, Shirley, and for her future inheritance as generously and amply as he shall provide for any other child of such subsequent marriage or remarriage; provided, however, that the first party shall be granted discretion as to providing support and education for such child, Shirley, or bequeathing or settling upon her sums of money in the event of her mental incompetency or moral turpitude affecting the said child's responsibility or character. The first party further agrees to give the said child the same religious and educational advantages and environment as the parties hereto themselves have been accustomed and which shall be consistent with the home environment in which she is now and in the future surrounded.

"*Fifth.* The first party hereby agrees to and with the second party to pay her the sum of One Hundred ($100.00) Dollars per week on Monday of each week beginning on the first Monday after the date hereof for the support and maintenance of the second party during her lifetime or until she remarries, with the understanding that the said second party is to maintain her separate home in some suitable place, having regard for the comfort and welfare of said child, Shirley, while visiting her. The first party agrees that he will make suitable provision in his Last Will and Testament for said payments upon the above conditions, in the event that the first party shall predecease the second party. * * *

" *Sixth.* The party of the first part further agrees to pay to the party of the second part simultaneously with the execution of this agreement, the receipt whereof is hereby acknowledged by the second party, the sum of One Thousand Five Hundred ($1,500.00) Dollars, for the purpose of allowing the second party to furnish a home for herself and to provide some surplus for contingent expenses."

Subsequently an action for divorce was instituted by Mrs. Armour in Nevada, in which the defendant husband appeared, so that the Nevada courts had jurisdiction of the cause and of the parties. The decree in favor of the plaintiff ratified and embodied the terms of the separation agreement in respect to the support and maintenance of Mrs. Armour and also the custody and support of the child. The decree was dated September 21, 1931, and read, in so far as material here, as follows:

" *It Is Further Ordered, Adjudged and Decreed* that the agreement made and entered into between the plaintiff and defendant on July 2nd, 1931, be, and the same is hereby by this Court ratified and approved and the provisions thereof are hereby adopted by this Court.

" *It Is Further Ordered, Adjudged and Decreed* that the custody and care of Shirley Elizabeth Armour, the minor child of the parties, is awarded by this Court in accordance with the terms of said agreement and that said minor child shall be maintained and supported in accordance with the provisions thereof.

" *The Court* reserves jurisdiction to enter further and different orders herein relative to the custody and support of said minor child."

The Nevada court, having jurisdiction of the action and of the parties, gave the custody of the offspring to the father during the week and to the mother over the week-ends. This decree is, therefore, entitled to full faith and credit in every State in the Union. The wife is bound by it, so is the husband; the courts here cannot

review it or set aside its provisions in the absence of fraud; neither can any judge of this State change the custody of the child merely because he does not agree with the action of the Nevada court. True it is that the child given to the father is a ward of the courts of this State when here, and that the custody may be changed when circumstances or treatment since the decree render it necessary for the child's best interests (*Finlay* v. *Finlay*, 240 N. Y. 429), but until some such facts appear our courts cannot change the Nevada decree simply because they do not agree with the decision. (*Laumeier* v. *Laumeier*, 237 N. Y. 357; 242 N. Y. 501; *Yarborough* v. *Yarborough*, 290 U. S. 202; *People ex rel. Jones* v. *Johnson*, 205 App. Div. 190; *Matter of Lee*, 220 N. Y. 532.)

On February 10, 1932, the defendant remarried and in April of the same year Mrs. Armour retained the plaintiff, a lawyer, to represent her in an attempt to gain additional or increased allowance and also the custody of the daughter. It is conceded that the defendant has kept every one of his obligations as set forth in the Nevada decree, paying the money therein provided for his wife and child when with the mother. The wife, through her counsel, recognizes that as to the lawyer's fees she cannot collect them from the defendant, as her separation agreement and the divorce decree provide that she would incur no further bills or obligations chargeable to the husband.

The plaintiff, however, in behalf of the wife or, as alleged, for the benefit of the child, conducted habeas corpus proceedings before a judge of the Supreme Court, Queens county, of this State, and for such services has been given in this action a judgment of $7,588.29. The hearing on the return of the writ of habeas corpus resulted in the judge reversing the Nevada court's decree and giving the child to the father over the week-ends and to the mother the other days. Apparently the only reason for this action is the opinion of the justice that a child is better with the mother than with a father, for he says,

" The child's greatest need at this time is not the things that money will buy, but understanding, love and affection, such as can exist only between a mother and her daughter." (147 Misc. Rep. 313, 314.) The Nevada court, having the parties before it, passed upon this question as to the husband and wife. Nothing, so far as the record before us shows, indicates that the welfare of the child due to subsequent events or conditions demanded or required a change in custody. The plaintiff apparently was consulted by Mrs. Armour for the purpose of bettering her financial condition, with the belief that she was not bound by her decree of divorce and the provisions for herself and child therein contained.

In his bill of particulars the plaintiff states that on the 3d of June, 1932, he had a conference with Mr. Armour and says that he suggested to Mr. Armour $25,000 to $50,000 in settlement of Mrs. Armour's claim for inadequacy of alimony provided in separation agreement, and read the legal authorities to Mr. Armour " re inadequacy " of amount agreed upon for support and maintenance, and on June 28th had another conference. He asked for $800 a month for the support of Shirley and Mrs. Armour (also to include the grandmother). This was an increase of $400 a month over that provided in the agreement and the decree. He also states that at various times he received compensation of $700 for legal services in these matters from Mrs. Armour. Another action is pending, or has been brought in Westchester county, by Mrs. Armour to recover for necessaries which she claims to have furnished to the daughter Shirley. We, therefore, find that this habeas corpus proceeding to procure the custody of the child was an outgrowth, or at least a part of an effort upon the part of the mother, to get more money from her husband than was awarded to her in her divorce decree.

This court said in the *Finlay* case, above cited, regarding proceedings to obtain the custody of children: " He

[the chancellor] is not adjudicating a controversy between adversary parties, to compose their private differences. He is not determining rights ' as between a parent and a child ' or as between one parent and another (*Queen* v. *Gyngall, supra*). He ' interferes for the protection of infants, *qua* infants, by virtue of the prerogative which belongs to the Crown as *parens patriæ* ' (*Matter of Spence, supra*). The plaintiff makes no pretense of invoking this paternal jurisdiction. We are not advised by his complaint whether a division of the custody will tend to the benefit of his sons or to their detriment. He invokes the jurisdiction of a court to settle a dispute. Equity does not concern itself with such disputes in their relation to the disputants. Its concern is for the child " (p. 434).

The plaintiff, Mr. Ansorge, in this action has sought to recover from the father for legal services in these habeas corpus proceedings to obtain from him the custody of the child and give it to the mother on the ground that this was a proceeding for the welfare of the child and was a necessary for which the father was liable. The plaintiff had the burden of proving facts showing such necessity for the proceedings as well as a necessity for a change in the custody of the child. (*Hatch* v. *Leonard*, 38 App. Div. 128; *Goodman* v. *Alexander*, 28 App. Div. 227.) The Nevada decree stands as binding upon these parties until it is shown that since such decree circumstances have so changed that the welfare of the child demands a shift in custody. Mr. Ansorge himself testified that unless Mrs. Armour could show changed circumstances the court might not take jurisdiction here. We find nothing in this record furnishing proof of any such necessity to change the terms and conditions of the agreement of the parties and the decree of divorce granted in Nevada embodying those terms. It does appear that the defendant has remarried, but this fact was within the contemplation of the parties at least when the agreement was made

and the decree in Nevada entered, for paragraph fourth thereof provides as to the nature of the last will and testament of the defendant should he remarry any other woman.

Even from the opinion of the judge (147 Misc. Rep. 313) we gather that the father has provided a good home for his child and has fully complied with all the terms and conditions imposed upon him by the terms of the agreement and the Nevada decree. The judge said, " Each parent admits that the other is morally and culturally fit to have custody of the child. The father admits that his former wife during the time she lived at his home was a perfect mother to the little girl, and the court does not take seriously the slight evidences claimed by the mother to be indicative of the fact that the child is being neglected in its father's home."

In view of these findings, and in the absence of any evidence in this record showing that the welfare of the child demands a modification or a change in the custody as awarded by the divorce decree, we cannot find that justification for a habeas corpus proceeding which makes it necessary for the father to pay the lawyer hired by the mother to conduct it.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur; LEHMAN, J., concurs in result.

Judgments reversed, etc.