Owen McOivern, J.
Before this court there is a petition and a writ of one Bene Lang, a resident of Zurich and a citizen of the Confederation of Switzerland, wherein he seeks custody, *610 "by way of a habeas corpus proceeding, of his two infant children, Gerald and Francis. In opposition to his petition, a return was filed by the respondent, Marion Eothstein, his former wife, in whose actual custody both infants were at the time the writ was returned.
On the return day it developed that all the principals were citizens of Switzerland, and that the petitioner father had been awarded legal custody of the infants pursuant to a decree of the Court of Appeals of the Canton of Zurich, Switzerland, with visitation privileges to the respondent mother herein, following a divorce between the parties. It further developed that while the respondent mother was enjoying her visitation rights in Switzerland, she, in the company of her present husband, abducted the children and by devious routes and means, came with them to this country. The petitioner father, as a citizen of a friendly foreign power, requested this court to give automatic effect to his Swiss rights of custody, and to order the immediate return of the boys to him. The respondent challenged this position and urged this court to give a 1 ‘ new look ’ ’ at the present welfare of the infants, even though they were in this jurisdiction in violation of the order of a foreign court, relying on precedents such as Matter of Bachman v. Mejias (1 N Y 2d 575); Matter of Hicks v. Bridges (2 A D 2d 335 [1956]); People ex rel. Pritchett v. Pritchett (1 A D 2d 1009; People ex rel. Muller v. Muller (124 N. Y. S. 2d 138 [1953]); Weiner v. Weiner (149 N. Y. S. 2d 362 [1956]). This court, after personal conferences with the parties, and after consultation with the attorneys, agreed to take the technical aspects of the proceedings under advisement, pending the receipt of briefs from counsel; and directed that factual custody remain with the mother, with visitation privileges to the father over a week-end recess. These latter privileges were accorded the father in view of his solemn assurances, exacted by the court that as a responsible business man of some status in Switzerland, enjoying the hospitality of New York, and having himself invoked the aid of this court for the return of his sons, he would not abuse these grants, and would under no circumstances remove the infants from this jurisdiction while the proceeding was sub judice. But it came to pass that while enjoying his grant of visitation, he broke his plighted word and made off with the youngest of the boys, Francis, and returned to Switzerland.
Thus, the court was left with but one boy before it, the petitioner and the other boy no longer in the jurisdiction. This, court decided that despite the decree of Switzerland, it was not *611 precluded from taking testimony concerning what would currently he in the best interests of the remaining child, and that it would explore the question as to whether or not a change of circumstances had occurred since the Swiss decree as would warrant a determination of custody at variance with that decree (Ansorge v. Armour, 267 N. Y. 492, 499). And so proof was taken, the petitioner absent, but represented by his attorney who participated in the examination.
The hearings disclosed that the mother respondent has contracted a second marriage that appears to have stability and promise of continuity, and that she is now free of the behavior that so disturbed the Swiss court; further, that the boy Gerald has been entered in a local New York school, is happy in the household of his mother and stepfather, and that it would seemingly be in his best interests to continue on in the care, custody and close affection of his mother. This conclusion is borne out by and buttressed by the explorations of the court’s family counselling unit. In passing, the court notes that the mother respondent did not distinguish herself and did not enhance her position by telling utterly fatuous untruths about her assets; the court overlooks this, however, and attributes the misrepresentation to an excess of zeal, and very bad judgment.
And so, although under all the present circumstances, the welfare of the boy Gerald dictates that he remain with his mother, there is still a difficult “ open end” to a final disposition : how to achieve a reunion of the brothers who have been separated by the lawless acts of their own parents, both of whom have shoved by justice and laid rude hands upon the law. As a result of their unilateral acts, one brother is now in Switzerland, in the possession of a father who is exposed to a contempt citation should he step within this jurisdiction. The other boy is here only because his mother removed bim hither in violation of a Swiss decree. These parents have in effect condemned each brother to an “ only child” existence, and broken the bonds of a fraternal love, which in this case is more than ordinarily strong, being as they are, children of divorced parents, each of whom has remarried.
The court then, dismisses the writ, gives custody of the boy Gerald to, and permits custody to continue, in the mother respondent at this time, but directs that the problem be re-evaluated within six months from the date of the entry of an order herein. Both parents are people of education, means, culture, background. Each was clever enough to whisk infants across national frontiers and oceans, in defiance of court decrees and *612 to their mutual distress. The court has confidence they are also clever enough to find a way to effect a reunion of their own infant sons — and the court gives them six months to propose a way.
Settle order.