Hugh R. Elwyn, J.
By writ of habeas corpus which has been referred by the Supreme Court to this court the petitioner seeks to regain the custody of her two-year-old daughter from her husband, Philip A. Haines who on June 21, 1967, in defiance of a temporary order of the Superior Court of the State of Oklahoma awarding exclusive custody and possession of the child to the petitioner, removed the child from the State of Oklahoma to the State of New York.
The parties were married at Lawton, Oklahoma on February 11, 1962, but established their marital domicile in the Township of New Paltz, Ulster County, New York where the respondent was employed as Park Superintendent at Lake Mohonk. Although the marriage was threatened from the start by much disharmony stemming from the wife’s immaturity and emotional instability and later undermined by well-founded suspicions of the wife’s infidelity, the parties continued to live *441 together until about May 1, 1967 when the wife suddenly left her husband to return to her parent’s home in- Lawton, Oklahoma, taking her infant daughter with her.
On May 9,1967 the respondent followed his wife and daughter to Oklahoma where, unsuccessful in his efforts to effect a reconciliation and to persuade his wife to return home, he reluctantly and unwillingly agreed to permit his wife to seek an immediate divorce. This, however, presented some legal difficulties for under Oklahoma law (Okla. Stat., tit. 12, § 1272) “ either the plaintiff or the defendant in an action for divorce must have been an actual resident, in good faith, of the State, for six months next preceding the filing of the petition” and of course neither party met this requirement. In order to circumvent this provision of the Oklahoma law the respondent, who was not represented by counsel, allowed his wife’s attorney to refer him to another attorney who undertook to represent him and in whose office, the respondent says, he signed without reading a petition petitioning the Oklahoma court for a decree of separate maintenance determining and decreeing his responsibility to the defendant and his minor child. The respondent’s petition, which was filed with the Oklahoma court on May 10 was promptly followed on May 11 by the filing of an answer and cross petition on the part of his wife, the defendant in the action, in which she sought a decree of divorce on the grounds of incompatibility and the exclusive custody as well as support for the child.
When the full import of this legal maneuvering to avoid the six months’ residency requirement finally dawned upon the respondent, he, still not wishing a divorce, on June 2 through counsel dismissed his own petition for separate maintenance and moved to dismiss his wife’s cross petition for divorce upon the grounds that it was an effort to perpetrate a fraud upon the court by violating the jurisdictional laws of the State of Oklahoma. While this motion was pending before the court and on June 20, 1967 the Oklahoma court made an order that during the pendency of the action the plaintiff pay to the defendant for alimony and child support the sum of $40 per week and another order setting the motion to dismiss and the defendant’s cross petition for a hearing on July 14. The following day June 21 the Oklahoma court made still another order awarding the exclusive care, custody and possession of the child Wanda Maurine Haines to the defendant and cross petitioner pending the hearing of the action and ordering the plaintiff, Philip A. Haines not to remove the child from the jurisdiction.
*442 However, at about 9:00 a.m. on the morning of June 21 and before the restraining order of the Oklahoma Court[1] was served upon his attorney, the respondent proceeded to his wife’s parent’s home, in Lawton, Oklahoma where he forcibly removed his daughter and then according to a prearranged plan, by rented car, chartered plane and commercial jet whisked his daughter back to New York State. Subsequent to the respondent’s departure from the State of Oklahoma the Superior Court of Oklahoma proceeded to hear the wife’s cross petition for divorce and on July 14, 1967, the plaintiff having defaulted, the Oklahoma court denied the plaintiff’s motion to dismiss the defendant’s cross petition, granted the defendant a decree of divorce, awarded exclusive custody of the child to the defendant, found the plaintiff to be an unfit person to have the custody of his daughter and ordered him to return the child to the custody of the defendant to Lawton, Oklahoma. The respondent did not, of course, comply with the decree of the Oklahoma court and so on August 14,1967 the petitioner armed with the Oklahoma divorce decree awarding her the custody of her daughter obtained a writ of habeas corpus from a Justice of the Supreme Court of this State.
In his reply to the writ the respondent asserts that the Superior Court of the State of Oklahoma was without power or jurisdiction to make any judgment concerning the marital status of the parties or to determine the custody of their minor child for the reason that neither of the parties on the date of the judgment was a bona fide resident of the State of Oklahoma. Although it would clearly appear that the Oklahoma divorce proceedings were collusive, nevertheless it also appears that such practice as was resorted to here has been sanctioned by the Oklahoma courts. . In Haynes v. Haynes (190 Okla. 596) the appellant challenged a divorce decree which had been granted on the answer and cross petition filed in the plaintiff’s action for separate maintenance brought pursuant to section 1284 of title 12 of the Oklahoma statutes which authorizes alimony without divorce, because of the failure of the cross petition to allege the local residence of the defendant for the period as required of the plaintiff in a divorce action by the provisions of the Oklahoma statute. The Supreme Court of Oklahoma held (p. 597) that the “ statute [Okla. Stat., tit. 12, § 1272] does not apply to a defendant who by cross-petition *443 seeks a divorce. ” The court went on to say: “If the court has jurisdiction of the plaintiff’s action wherein a cross-petition for divorce is proper, then the residence of the defendant becomes immaterial to the court’s jurisdiction to grant a divorce on the cross-petition. Here, the plaintiff instituted her action for alimony in the nature of separate maintenance without divorce as authorized by 12 O.S. 1941 § 1284, setting up all necessary jurisdictional facts. The court was authorized by said section to grant either the wife or husband a divorce on proper grounds. ” (See, also, Anderson v. Anderson, 131 Okla. 95.)
The holding of Haynes v. Haynes (supra) may constitute a trap for the unwary[2] into which the respondent inadvertently stumbled or its authority may have been overruled by the amendment to section 1272 of title 12 of the Oklahoma statutes, effective June 24, 1965. At the time of the Haynes decision section 1272 read as follows: 1‘ The plaintiff in an action for divorce must have been an actual resident, in good faith, of the State, for six (6) months next preceding the filing of the petition, and a resident of the county in which the action is brought at the time the petition is filed.” At that time the only Oklahoma statute which imposed a residence requirement was section 1272 and that requirement was with respect to a plaintiff in an action for divorce. Effective June 24, 1965, section 1272 was amended to read as follows: “ Either the plaintiff or the defendant in an action for divorce must have been an actual resident, in good faith, of the State for six months next preceding the filing of the petition. ” (Emphasis supplied.)
The Oklahoma law as respects the residency requirements for divorce was extensively briefed by counsel for both parties and so far as this court is aware there has been no decision of the Supreme Court of Oklahoma since 1965 that would purport to lend a different meaning to the statute, as amended than the language contained in the statute itself. Indeed, it is asserted that the amendment to the Oklahoma statute was designed to overcome the very problem that has been brought to light in this case. However, be that as it may, the interpretation and effect of the amendment of the Oklahoma statute is for the Oklahoma courts, rather than this court.
Regardless of the interpretation put upon the Oklahoma divorce statutes by the Oklahoma courts, the fact remains that *444 the respondent initially invoked the jurisdiction of the Oklahoma court by filing a suit for separate maintenance, pursuant to the laws of Oklahoma. Having made a personal appearance therein it is extremely doubtful that he could collaterally attack the divorce for want of jurisdiction in the State of Oklahoma,[3] and being unable to attack the divorce decree in the rendering State the respondent cannot attack it for want of jurisdiction in New York (Johnson v. Muelberger, 340 U. S. 581). Having invoked the jurisdiction of the Oklahoma court and having participated in that action he may not in this State relitigate the issue of residence or the jurisdiction of the Oklahoma court to grant the decree. (Lynn v. Lynn, 302 N. Y. 193, 201 citing Johnson v. Muelberger, supra", Sherrer v. Sherrer, 334 U. S. 343; Coe v. Coe, 334 U. S. 378; Davis v. Davis, 305 U. S. 32; Senor v. Senor, 297 N. Y. 800; Matter of Rhinelander, 290 N. Y. 31, 36-37; Glaser v. Glaser, 276 N. Y. 296). At the time of the matrimonial proceeding in the Oklahoma court the child was physically present in the State of Oklahoma, so that the Oklahoma court having jurisdiction of the parties also had jurisdiction to pass upon the question of custody and to render a decree thereon which is entitled to full faith and credit in this State as against the respondent’s claim to custody in these proceedings (Davis v. Davis, supra-, Ansorge v. Armour, 267 N. Y. 492; Matter of Standish, 197 App. Div. 176, affd. 233 N. Y. 689; People ex rel. Tull v. Tull, 245 App. Div. 508, affd. 270 N. Y. 619; Matter of Kananack, 272 App. Div. 783; Matter of Boice, 286 App. Div. 1126; Matter of Sutera v. Sutera, 1 A D 2d 356).
Nevertheless, “ in New York it is settled that the mere physical presence of the child in the State is sufficient to confer on its courts power to make effective disposition for the child’s welfare, including the determination of custody.” (Matter of Lang v. Lang, 9 A D 2d 401, 406, affd. 7 N Y 2d 1029). “ It is the duty of the New York Supreme Court to determine the custody of minor children in this State and such determination is to be based solely on the welfare of the minors. The responsibility for the welfare of infants endows the court with the power to determine custody irrespective of the residence and domicile of the parents and prior custody orders in a foreign jurisdiction ” (Matter of Bachman v. Mejias, 1 N Y 2d 575, 581). Such responsibility transcends the rule of comity as well as full faith and credit (May v. Anderson, 345 U. S. 528; Matter of Hicks v. Bridges, 2 A D 2d 335; People ex rel. Pritchett v. Pritchett, *445 1 A D 2d 1009, affd. 2 N Y 2d 947; People ex rel. Herzog v. Morgan, 287 N. Y. 317; Matter of Bull [Hellman], 266 App. Div. 290, affd. 291 N. Y. 792; People ex rel. Halvey v. Halvey, 185 Misc. 52, affd. 269 App. Div. 1019, affd. 295 N. Y. 836, affd. 330 U. S. 610; Finlay v. Finlay, 240 N. Y.,429, 431). In short, as the court said in People ex rel. Abajian v. Bennett (15 Misc 2d 260, 264) “the decrees of [foreign] States in no way diminish the prerogative of the courts of the State of New York, as ‘ parens patrise ’ to do what it considers best for the welfare of infants within its jurisdiction”.
However, the statement of the Court of Appeals in Matter of Bachman v. Mejias (supra, p. 580) that “ the full faith and credit clause does not apply to custody decrees ” should not be construed to mean that the same issues may be relitigated in any forum in which the child may be found or that our courts will change the foreign decree simply because we do not agree with it. It is only when circumstances have so changed since the entry of the foreign decree as to render it necessary for the child’s best interest that a change in custody be made that our courts can alter or modify the foreign decree (Finlay v. Finlay, supra; Matter of Abreu v. Abreu, 46 Misc 2d 942; Family Ct. Act, § 654). Until some such facts appear our courts cannot change the Oklahoma decree simply because they do not agree with it. (Ansorge v. Armour, supra, p. 499; People ex rel. Herzog v. Morgan, supra, p. 320; People ex rel. Tull v. Tull, supra, p. 510; Matter of Bull [Hellman], supra, p. 291; Matter of Jiranek, 267 App. Div. 607, 610; People ex rel. Abajian v. Dennett, supra, p. 265; 15 N. Y. Jur., Domestic Relations, § 362; 16 N. Y. Jur., Domestic Relations, § 988; 25 N. Y. Jur., Guardian and Ward, § 83.)
Here there is no proof of any change of circumstances affecting the welfare of this child since the rendition of the Oklahoma decree of July 14, 1967 awarding custody of the child to the mother, except those wrought by the respondent’s removal of the child to New York State in violation of order of the Oklahoma court. During the course of this hearing a considerable amount of credible testimony was adduced on the part of the respondent, almost all of it antedating the mother’s return to Oklahoma, reflecting adversely on the mother’s moral character and emotional stability. Had the matter come before this court initially and the same testimony been adduced I should have had grave doubts about the wisdom of awarding this child’s custody to its mother, in spite of the fact that a child so young may be more in need of a mother’s love than a father’s care. However, as previously pointed out this court cannot change the *446 award of custody of the Oklahoma court merely because it may disagree with it.
This matter came on for a hearing before this court on September 29, 1967 and after a full day of trial was adjourned for further proceedings to October 6, 1967. At the conclusion of the September 29 hearing the petitioner beseeched the respondent to permit her to see her daughter, a request to which he readily acceded. As it turned out this, so far as the respondent is concerned, proved to be a mistake, for no sooner did his ex-wife get her hands on her daughter than she and her mother who had accompanied her to New York took off with the child back to the State of Oklahoma. On October 5 the court was notified by letter from the petitioner’s attorney that on October 2, 1967 he had received a telephone call from the petitioner informing him that she had returned with the child to Lawton, Oklahoma and that she had no intention of returning to New York State for the trial scheduled to resume on October 6. The trial continued to a conclusion without the presence of the petitioner or the child who since October 2, 1967 have continued to absent themselves from the State of New York and are presumably residing in the State of Oklahoma.
By resorting to trickery and deception to remove the child from the jurisdiction of this court while this proceeding was pending the petitioner has shown her contempt for the courts of this State and is entitled to no further consideration therefrom. During the course of this tangled custody battle both parties have resorted to the remedy of self help and by their impetuous behavior both have demonstrated their lack of confidence in and even contempt for the judicial process. Both parties stand equally condemned on this score.
In this posture of the case some observations of the Appellate Division from Matter of Lang v. Lang (9 A D 2d 401, 408, affd. 7 N Y 2d 1029) are apt and point the way to a proper resolution of the dilemma posed by the fact that while the court having acquired jurisdiction by reason of the child’s presence in this State cannot be deprived of jurisdiction by its unauthorized removal, yet the petitioner by her own actions in removing the child outside the State has effectively put the child beyond the power of the court. In the Lang case the courts of Switzerland had first awarded custody of two boys to their mother, and then, for cause, had transferred custody to their father. The children were spirited away by their mother, in violation of Swiss law, from Switzerland to New York. The father, after invoking the aid of the New York courts to recover the custody of both children, in turn, spirited away the younger boy back to Switzerland *447 with him in violation of the stipulation he had made to the New York court.
Commenting upon the efficacy of a resort to self help in the light of the principle of comity the court said (p. 408): “ Adherence to the principle of comity provides the key to rational disposition for the welfare of the children, not only in this case, but in many, if not most, custody cases involving self-help. And for this reason: comity makes futile and thus discourages the resort to self-help which in the custody dispute is an irresponsible and barbaric remedy. Not only does self-help make the eventual placement of the children an arbitrary consequence but it breeds reprisal in kind, as, indeed, happened in this case.
“ So it is that while the principle of comity does not bind the courts of this State to accept the determination of a foreign domiciliary court, the principle nevertheless requires willing recognition, except in extraordinary circumstances affecting the health and welfare of the children. Such circumstances, usually, will not have existed or have been known to the foreign domiciliary court at the time it acted. In their absence, New York courts will yield readily to the domiciliary courts and not compound confusion by conflicting determinations or evaluations with regard to the same children (see Ansorge v. Armour, 267 N. Y. 492, 501).”
The applicability of this dictum to this case may be weakened somewhat by the fact that Oklahoma may not have been the “ domiciliary ” State of the parties or their child, their presence there having been dictated by the fortuitous circumstance of the wife’s abandonment of her husband to return to her parent’s home and her husband’s pursuit. However, if the principle of comity requires willing recognition of the custody decrees of a foreign domiciliary court, how much more forceful is the command of the full faith and credit clause as applied to sister States of the United States Í
In the light of the foregoing principles and in consideration of the fact that by her own actions the petitioner has put the child beyond the power of this court, the writ of habeas corpus is dismissed.

. The order of the Oklahoma Court forbidding the respondent to remove the child from the court’s jurisdiction is dated June 21, 1967 and was filed in the office of the Court Clerk of Comanche County, Oklahoma on June 21, 1967 at 10:10 a.m.

. See “A Loophole in the Law of Divorce” by Ted Foster, Assistant Dean and Professor of Law, Oklahoma City University School of Law, 29 Okla. Bar Assn. Jl., p. 41 et seq., commenting upon the Haynes case.

. The respondent has not shown that Oklahoma would permit him to attack its decree under the circumstances existing here.