Stanley Gartenstein, J.
In Armstrong v. Grimes (70 Misc 2d 549) this court, faced with a Texas decree of custody and the question of modification thereof, held that, absent jurisdiction over custody either by referral from a court of competent jurisdiction or directly conferred by statute, this court’s power to modify an out-of-State custody decree would derive strictly from section 654 of the Family Court Act and would of necessity depend on that State’s power to modify its own decree. (Citing Halvey v. Halvey, 330 U. S. 610.) In that matter, the court dismissed a petition based upon the most clear-cut possible change in circumstances, viz., the death of the mother who had custody. That matter was decided on the eve of the effective date of section 651 which gave this court original jurisdiction in custody matters, as well as referred jurisdiction from the Supreme Court which it already had.
The within custody matter now comes before the court on referral from the Supreme Court in which proceedings were commenced by writ of habeas corpus. The petitioner is the natural father of the infants in question. The respondent mother is remarried and lives with her husband and the children in this county on Federally owned installations on the Army base at Fort Wadsworth where the new husband is now stationed. Petitioner was, at all times relevant herein, and continues to be, a domiciliary of the State of Florida. He brings on this proceeding through New York counsel.
The parties herein were domiciled in Florida as husband and wife until they were divorced sometime in 1967 by decree entered in favor of the wife against the husband which awarded custody of the children to her.
On or about November 22,1969, the wife voluntarily delivered the children to their father together with a notarized letter in which she purported to transfer ‘ ‘ custody ’ ’ to him. This was made the basis of a formal proceeding in Florida against the mother resulting in a default decree on January 20, 1970 awarding custody to the father (“ 1970 custody order ”).
*918 Sometime thereafter, having a change of heart, the mother caused a petition for modification to be filed on February 12, 1971 seeking a return of custody to her, which was granted on default on August 16, 1971 (“ 1971 custody order ”). This order directed return of the children to the mother. Failing compliance with said order, the Florida court, on September 17,1971, in effect held the father in contempt; granted leave to purge by delivery of the children within 10 days; and directed the Sheriff to execute if compliance was not forthcoming. On December 26, 1971, the children were taken by the Sheriff and the father seized and incarcerated for his failure to deliver them. The mother was already married and living in New York and the children were delivered to her attorney until she came to Florida to pick them up and bring them to New York.
Thereafter, the husband, by motion filed on December 28, 1971, moved the Florida court for an order setting aside the 1971 custody order giving the children to their mother, based on the fact that he was allegedly never served in that proceeding. This was brought on twice, the first attempt failing because service of process could not be effectuated; the second brought on by notice dated March 11, 1972, returnable May 22, 1972, which was met with a cross petition to dismiss brought on by the wife’s counsel. The matter was heard on September 22, 1972, at which time an order dated November 2,1972 (“ 1972 custody order ”) vacated the default by virtue of which the 1971 custody order was entered and awarded custody to the father.
There is now pending another proceeding in that State, brought on by the mother by petition filed on November 11, 1972 to amend that court’s decree to award custody to her.
It must be emphasized first that the children have been in this State since their first delivery subsequent to Sheriff’s execution on the 1971 custody order; and second, that the adjudication on November 2, 1972 in Florida, although made upon appearance by the wife’s counsel, was on the procedural basis of rolling proceedings back to the 1970 custody order in favor of the father (entered on default) and not on the merits. It was made without the presence of the children in that State-.
The within writ is now based upon the Florida award of custody to the father.
DOMICILE, WITHIN THIS STATE DERIVING FROM RESIDENCE ON FEDERALLY OWNED INSTALLATIONS
The first issue to be adjudicated is that of jurisdiction in this State based upon residence on the Federally owned installations at Fort Wadsworth. Although facilities of this type would *919 ordinarily not be the subject of a host-State’s jurisdiction, the United States has contracted that its acquisition of such land by it shall not impede or prevent the execution of any civil or criminal process issued under State authority such as does not affect the real or personal property of the United States. In accordance therewith, the Court of Appeals has held in Matter of Kernan (272 N. Y. 560) that this State has jurisdiction in habeas corpus proceedings over a child residing on such installations. The children herein are therefore held to be domiciled “ within ” this State for the purpose of conferring jurisdiction.
CONSTITUTIONAL INSULATION 03? SISTEB-STATE CUSTODY DECREES
The confusion centering around the extent of full faith and credit required by section 1 of article IV of the United States Constitution as to custody decrees of another State is due in part to the fact that, although an award of custody may be made ancillary to an adjudication of matrimonial rights in litigation between husband and wife, either bilateral or ex parte, the jurisdiction to award custody of infants or to recognize the decrees of another State is complicated by the concept that the child is a separate person not necessarily bound by the adjudication between his parents. This factor is coupled with the inherent duty of a State in which a child is found to act as parens patriae to that infant, sometimes notwithstanding an order of another State’s court.
Added to these basic concepts is the confusion resulting from separate holdings of the Supreme Court of the United States which, although seemingly comprehensive, have left gaps or grey areas into which the separate States have stepped, each in accordance with its own public policy. These Supreme Court holdings have been debated almost as frequently over what they did not say, as over what was actually held. To delineate:
Úi Halvey v. Halvey (330 U. S. 610, supra), a New York mother took her child to Florida where she filed suit for divorce some time later. The husband was served by publication and defaulted in the divorce action but physically spirited away the child to New York one day before the entry of judgment. The mother brought on a writ of habeas corpus, but the court, instead of extending full faith and credit to the Florida decree, modified it and allowed visitation to the father. On appeal to the Supreme Court, it was held that the concept of full faith and credit is not offended by allowing modification of the Florida decree since Florida itself allows modification. Since Congress had been given the right under section i of article IV of the Constitu *920 tion to legislate the extent of constitutional insulation a decree receives out of its own State; and since Congress had so legislated (U. S. Code, tit. 28, § 1738) that it receive the same effect in the second State as it would in the rendering forum, New York could so modify the decree. It was emphasized that the Florida court had not adjudicated the issues of custody and visitation on the merits and had not heard the father’s evidence. It was also a fact that the parties, viz., father, mother and child, were all before the New York court, thus perfecting jurisdiction for New York to act.
Thereafter, May v. Anderson (345 U. S. 528) involved an order of the Ohio court which refused to recognize the custody decree of Wisconsin which had rendered the divorce decree awarding custody to the father. It was clear from the record therein that the mother and children had moved to Ohio after the parties separated and that Ohio, seizing upon the presence of the children in its State as justifying the exercise of jurisdiction to act as parens patriae for the infant, gave no color of full faith and credit to the Wisconsin decree. The Supreme Court refused to upset the determination of the Ohio court. Although there was no specific language to this effect, this decision has been interpreted as removing custody decrees from the full faith and credit clause if a child can physically be brought into a State which then undertakes to act on his behalf. (See 2 Foster and Freed, Law and the Family, § 29.34.)
Even the Supreme Court itself has not stepped into the grey area between Ealvey and May. Perhaps the clearest indication of the Supreme Court’s present inclinations on this problem is illustrated by its decisions in Stout v. Pate (347 U. S. 968) and Pate v. Stout (347 U. S. 968) where the courts of Georgia and California handed down inconsistent decrees within months, each case having been litigated on the merits, and each court having been apprised of a contrary decision by the other. Nevertheless, the Supreme Court denied certiorari in each case-(See, also, Kovacs v. Brewer, 356 U. S. 604.)
We move now to this State’s authority in this realm.
In Matter of Bachman v. Mejias (1 N Y 2d 575, 581), the Court of Appeals made it the duty of the courts of this State to determine custody of minor children within our geographical borders and to base said determination solely on their best interest “ irrespective of the residence and domicile of the parents and prior custody orders in a foreign jurisdiction”. This matter involved an adjudication of the courts of Puerto Rico. The decrees of sister-State courts are viewed in a similar manner.
*921 In People ex rel. Pritchett v. Pritchett (1 A D 2d 1009, affd. 2 N Y 2d 947), the court held that even where an Illinois sister-State decree was involved, New York would exercise its own jurisdiction over a child within its borders notwithstanding a temporary or permanent decree of that State.
We move now to the effect of the mother’s appearance by counsel in the Florida proceedings. Does her submission to jurisdiction therein, both in the proceedings leading to the 1972 custody order and in the currently pending proceedings for modification, estop her from challenging the validity of the Flordia proceedings at this time?
The recent adjudication in Matter of Berlin v. Berlin (21 N Y 2d 371) would appear to address itself to this matter. In that matter, a Maryland divorce decree awarded custody to a mother who then took the chlidren to New York. The decree was later amended by the Maryland court which went so far as to hold the mother in contempt and to transfer custody to the father. The mother tried unsuccessfully to have that decree vacated in Maryland. Despite this, holding that no estoppel took place, the New York courts, following the mandate to adjudicate custody in the best interest of children within its borders, awarded custody to the mother. The best interest of the children prevailed over any considerations of estoppel, res judicata or full faith and credit, even though the mother had carried her claim into the Maryland courts and had lost there.
• Perhaps the most significant facet of Berlin was the fact that, given the opportunity, the United States Supreme Court refused to intervene and denied certiorari (393 U. S. 840). It can thus be assumed, with at least some degree of certainty, that New York’s approach is not disapproved by the Supreme Court.
It thus appears that the uncontested domicile of these children in this State is crucial; that the children were never physically in Flordia at the time that court undertook to act; and that, as separate entities with their own legal rights independent of either parent, they are entitled to the protection of the courts of this State. The Florida decree rendered on procedural grounds does not bind this court.
It is also germain to note that in reverse, the State of Florida has done exactly the same to New York’s decrees as the mother now seeks to have done to the Florida decree. In the celebrated case of Scarpetta v. DeMartino (254 So. 2d 813) disregarding not only a custody award to a natural mother, but the adjudication of contempt against the prospective adoptive parents, the Florida court, having physical possession of the child within *922 its borders, proceeded to act as parens patriae in its interest, and, notwithstanding the New; York decree, awarded custody to the adoptive parents.
A perspective backward in this matter seems appropriate in view of the fact that it appears inescapable that this court must rule itself bound to accept jurisdiction. An examination of Supreme Court authority and subsequent cases in the respective States appears to justify the conclusion that they have created power struggles between embittered parents, with each round in the continuing battle depending on who may physically spirit away a child last. What is far worse for the orderly administration of justice is the fact that the courts of competing States have become embroiled in the tug-of-war between the litigants almost as principals in their own right. At this late date, it appears that Mr. Justice Rutledge, in his concurring opinion in Halvey v. Halvey (330 U. S. 610, 610, 620) was a prophet predicting the exact state of affairs to come when he stated: “ The result seems unfortunate in that, apparently, it may make possible a continuing round of litigation over custody, perhaps also of abduction, between alienated parents. That consequence hardly can be thought conducive to the child’s welfare * * * The effect of the decision may be to set up an unseemly litigious competition between the states and their respective courts as well between parents. Sometime, however, there should be an end to litigation in such matters ”.
At this point, with this court inclined to assume jurisdiction, the attendant hardships on the father of taking time off from employment, of rounding up and transporting witnesses to this State, of counsel fees in two States, of the numerous incalculable side expenses for travel, hotels, food and the like, would all appear to be beyond his pocketbook. It may very well be wondered how the ends of justice are achieved by placing litigation which seeks to determine the best interests of children on the merits beyond the financial reach of one of the parents. This consideration, however, is beyond the court’s ability to deal with.
The court holds that it has jurisdiction to act as parens patriae of these children; that the prior decree of the Florida court (A) on procedural grounds, (B) not on the merits, and (C) without the presence of the children within that State, is not binding and need not be extended full faith and credit even, in the light of the mother’s participation through counsel in the Flordia proceedings.
Recalendar for plenary hearing on the issues presented concerning the best interests of the children.