Hugh R. Elwyh, J.
By petition and order to show cause pursuant to subdivision (b) of section 651 of the Family Court Act the petitioner seeks to regain the custody of her year-and-a-half-old daughter, Rebecca Michelle who since March 3,1973 has been in the custody of her father, Jeffrey P. Borges.
The parties were married on July 18, 1970 in the State of Alabama. One child, Rebecca Michelle, was born of their marriage on January 25, 1972. Marital difficulties developed and on February 11, 1973 the parties separated. While the petitioner sought to obtain suitable separate living accommodations for herself she left the child with her mother. On the afternoon of March '3, the respondent took the child from his mother-in-law’s home for the purpose of taking the child to visit a doctor. Some time after taking the child to the doctor he decided not to return the child to her grandmother’s home and instead departed immediately with the child for New York State, where he arrived approximately 24 hours later. The respondent subsequently informed his wife of the child’s whereabouts, but because he has refused to return the child to the mother who still resides in the State of Alabama this proceeding was commenced by the mother on June 22, 1973.
Shortly after the respondent’s precipitate departure for New York and on March 6, 1973 the wife commenced a divorce proceeding in the courts of Alabama. On March 8, 1973, only five days after the respondent left Alabama, the (Circuit Court of Coffee County, Alabama, entered an interim order awarding the care, custody and control of the child Rebecca Michelle to her mother pending further orders of the court, directing the respondent to deliver the child to her mother immediately and enjoining him from interfering with the custody and control of *987 the mother or removing the child from the jurisdiction of the court.
Subsequently, and on July 3, 1973 the Circuit Court of Coffee County, Alabama, entered its decree of divorce based upon service by publication, by which it granted the complainant Barbara Borges a divorce from the defendant Jeffrey P. Borges and awarded custody of the child to the petitioner. The Alabama court, however, “ reserve [d] the fixing of alimony and support until such time as the Court may obtain jurisdiction of the person of the said Jeffrey P. Borges ”, thereby expressly recognizing that it had no personal jurisdiction over the respondent.
In this court the petitioner, although conceding that custody decrees of foreign States are not entitled to full faith and credit under the full faith and credit clause of the United States Constitution (Matter of Bachman v. Mejias, 1 N Y 2d 575), contends that under the circumstances of this case the determination of the Alabama court should be given recognition, and cites in support thereof Matter of Lang v. Lang (9 A D 2d 401, affd. 7 N Y 2d 1029); People ex rel. Sloane v. Sloane, 20 A D 2d 862, affd. 15 N Y 2d 561) and Matter of Berlin v. Berlin (21 N Y 2d 371). “ Respondent’s leaving Alabama to avoid a divorce and custody proceeding which he knew was imminent should ” she says, “ be looked upon with the same disfavor as if he sought to avoid a custody decree already made.” The Alabama court, it is argued, ‘ ‘ had domiciliary jurisdiction to make a custody decree, and absent a showing of an extraordinary or substantial change of circumstances, the Alabama decree should not be disturbed (Metz v. Morley, 29 A D 2d 462).”
There is no doubt that as far as full faith and credit is concerned, custody decrees occupy a unique position in the law. That they are not required to be accorded the full faith and credit required by section 1 of article IV of the United States Constitution to other judicial proceedings is firmly established by many authorities (Halvey v. Halvey, 330 U. S. 610; May v. Anderson, 345 U. S. 528; Ford v. Ford, 371 U. S. 187; Hernstadt v. Hernstadt, 373 F. 2d 316; Matter of Bachman v. Mejias, 1 N Y 2d 575; Matter of Berlin v. Berlin, 21 N Y 2d 371, cert, den. 393 U. S. 840; People ex rel. Pritchett v. Pritchett, 1 A D 2d 1009, affd. 2 N Y 2d 947; Matter of Hicks v. Bridges, 2 A D 2d 335; Matter of Gaukel v. Gaukel, 35 A D 2d 1056; People ex rel. Katherine “ XX” v. Roger Lewis “ ZZ ”, 43 A D 2d 196; Matter of Abreu v. Abreu, 46 Misc 2d 942; People ex rel. Wil *988 son v. Lawrence, 73 Misc 2d 916; Scarpetta v. DeMartino, 254 So. 2d 813 [Fla.]).[1]
What uncertainty exists arises out of the question whether the court, before it may disregard the prior foreign decree and make its own determination, must first find some material change of circumstances. A finding of a change of circumstances has frequently been held by New York courts to be a sine qua non for modification of a foreign custody decree (Ansorge v. Armour, 267 N. Y. 492, 499; People ex rel. Herzog v. Morgan, 287 N. Y. 317, 320; Matter of Berlin v. Berlin, 21 N Y 2d 371, 377, cert, den. 393 U. S. 840; Matter of Standish, 197 App. Div. 176, affd. 233 N. Y. 689; People ex rel. Tull v. Tull, 245 App. Div. 508, 510, affd. 270 N. Y. 619; Matter of Bull [Hellman], 266 App. Div. 290; MacKay v. MacKay, 279 App. Div. 350; Matter of Sutera v. Sutera, 1 A D 2d 356; Matter of Lang v. Lang, 9 A D 2d 401, 409, affd. 7 N Y 2d 1029; People ex rel. Sloane v. Sloane, 20 A D 2d 862, affd. 15 N Y 2d 561; People ex rel. Foussier v. Uzielli, 23 A D 2d 260; Matter of Metz v. Morley, 29 A D 2d 462, 464; Doolittle v. Doolittle, 35 A D 2d 684; People ex rel. Abajian v. Dennett, 15 Misc 2d 260, ,265; Matter of Hahn v. Falce, 56 Misc 2d 427, 433; Matter of Haines v. Haines, 56 Misc 2d 440, 445; see, also, Family Ct. Act, § 654; 16 N. Y. Jur., Domestic Relations, § 975; cf. Kovacs v. Brewer, 356 U. S. 604, in which the Supreme Court remanded the case to the State court to determine the issue of changed circumstances to avoid determination of the constitutional questions. But see dissenting opinion of Justice Frankfurter [pp. 609-616] criticizing the “ evident implication of the Court’s opinion * * * that unless ‘ circumstances have changed ’ since the latter decree, it must give full faith and credit ”).[2]
If the cases, which hold that a material change in circumstances or some extraordinary circumstance affecting the health and welfare of the child must first be found to exist before the court of the forum may modify a foreign custody decree, must uniformly be applied, then the petitioner is entitled to prevail *989 upon the strength of her Alabama decree which awarded her the custody of the child, for, except for the change in the child’s domicile wrought by the father’s precipitate removal of the child from Alabama to New York, there has been no showing of any material change in circumstances or any extraordinary circumstances affecting the health and welfare of the child (Hahn v. Falce, supra, p. 434; Matter of Haines v. Haines, supra, p. 445).
However, under the circumstances of this case in which the award of the child’s custody was made to the mother in an ex parte divorce action in which the Alabama court had no personal jurisdiction over the father and in which no facts were presented or considered by the court concerning the child’s welfare, the power of this court to act in the child’s best interest is not so limited (Halvey v. Halvey, 330 U. S. 610, supra; May v. Anderson, 345 U. S. 528, supra; Ford v. Ford, 371 U. S. 187, supra).
In Halvey v. Halvey (supra), a case remarkably similar to this case on its facts, the wife had obtained a Florida divorce decree upon service by publication, the husband making no appearance in the action. The day before the Florida decree was granted, the husband without the knowledge or approval of his wife took the child back to New York. The next day the Florida court granted the wife a divorce and awarded her the custody of the child.
The United States Supreme Court in its opinion by Justice Douglas recognized that ‘1 Facts which have arisen since the original decree are one basis for modification of the custody decree, Frazier v. Frazier, 109 Fla., p. 168,147 So., p. 465; Jones v. Jones, 156 Fla. 524, 527, 23 So. 2d 623, 625. But the power is not so restricted. It was held in Meadows v. Meadows, 78 Fla. 576, 83 So. 392—393, that ‘ the proper custody of the minor is a proper subject for consideration by the chancellor at any time, even if facts in issue could have been considered at a previous hearing, if such facts were not presented or considered at a former hearing. (Italics added.) ’ ” (Halvey v. Halvey, supra, p. 613.) Because of a failure of proof that the Florida decree received less credit in New York than it had in Florida, the court affirmed the right of the New York court to modify the Florida custody decree.
In May v. Anderson (345 U. S. 528, supra) the United States Supreme Court wrote: ‘ ‘ The question presented is whether, in a habeas corpus proceeding attacking the right of a mother to retain possession of her minor children, an Ohio court must *990 give full faith and credit to a Wisconsin decree awarding custody of the children to their father when that decree is obtained by the father in an ex parte divorce action in a Wisconsin court which had no personal jurisdiction over the mother. For the reasons hereafter stated, our answer is no.”
In Ford v. Ford (371 U. S. 187, supra) a Virginia court upon an agreement of the parties concerning the custody of their children made an award of custody. In subsequent litigation over the custody of the children a South Carolina court disregarded the Virginia decree and by its decree of custody in effect inverted the arrangements previously made by the parents. On appeal the Supreme Court of South Carolina reversed (p. 191) “ restfing] its decision squarely and solely on its reading of Virginia law and of the Full Faith and Credit Clause as requiring South Carolina, in the absence of a change of circumstances, to give full effect to the prior Virginia decree ”. The United States Supreme Court reversed the South Carolina court, saying (p. 194):
“ Whatever a Virginia court might do in a case where another court had exercised its considered judgment before awarding custody, we do not believe that, in view of Virginia’s strong policy of safeguarding the welfare of the child, a court of that State would consider itself bound by a mere order of dismissal where, as here, the trial judge never even saw, much less passed upon the parents’ private agreement for custody and heard no testimony whatever upon which to base a judgment as to what would be best for the children.
“We hold that the courts of South Carolina were not precluded by the Full Faith and Credit Clause from determining the best interest of these children and entering a decree accordingly. In holding otherwise, the South Carolina Supreme Court was in error.”
Accordingly, this court does not feel constrained by the Full Faith and Credit Clause of the United States Constitution to give full faith and credit to the custody provisions of the petitioner’s ex parte divorce decree obtained in an Alabama court which had no personal jurisdiction over the respondent and in which, so far as appears from the record, no facts were presented or considered by the court concerning the child’s welfare.
Even in the absence of a showing of a change in circumstances, “It is the duty of the New York Supreme Court to determine the custody of minor children in this State and such determination is to be based solely on the welfare of the minors. The responsibility for the welfare of infants endows the court *991 with the power to determine custody irrespective of the residence and domicile of the parents and prior custody orders in a foreign jurisdiction (Matter of Bachman v. Mejias, 1 N Y 2d 575, 581, supra.) Turning now to a consideration of the welfare of the child, the court finds such meagre evidence as there is preponderates in favor of the respondent’s retention of custody. Aside from the fact of motherhood, the petitioner presented little from which the court could justifiably conclude that the child’s welfare would be promoted or that its best interests would be served by her return to the mother who still resides in Alabama. The respondent, on the contrary, presented unrefuted testimony from a female friend of the petitioner, who was closely associated with her while they both resided in Alabama, to the effect that the petitioner’s home in Alabama was generally untidy, unclean and even unsanitary by reason of the large number of cats and dogs she was accustomed to keep about the house. More significantly, however, the respondent offered proof through the same witness that the petitioner had frequently been neglectful of her infant daughter in failing to change the child’s diapers when required and by permitting the child to remain for long periods of time in soiled diapers without attention.
On the positive side, the respondent’s proof shows that upon his return to New York he immediately made arrangements with a capable and well-qualified person to provide day care for the child during the hours when he was necessarily away from home by reason of his employment. The day care attendant testified that when the child was first placed in day care she was shy, very reserved and not normally active for a child of her age. However, over the months that the child has been in her care the day care attendant has observed a remarkable improvement in the child’s behavior. According to her, the child is healthy, has become less reserved, more outgoing and has exhibited normal activity for a child of her age.
It thus appears that the child has been well cared for since she has been in the father’s exclusive custody. The court is satisfied that the father can and will continue to provide adequate care for the child. There has not been demonstrated any sufficient reason for making a change.
The custody of the child is awarded to the respondent, subject to such visitation rights for the mother as the parties may agree upon. If the parties cannot agree upon the visitation rights for the mother the court will, upon proper notice to both parties fix and determine the same.
The petition is dismissed.

. Indicative of the Supreme Court’s disinclination to take a definitive stand on the matter are its decisions in Stout v. Pate (347 U. S. 968) and Pate v. Stout (347 U. S. 968) where the Courts of Georgia and California handed down inconsistent decrees within months, each case having been litigated on the merits, and each court having been apprised of a contrary decision by the other. Nevertheless, the Supreme Court denied certiorari in each case. (See, also, Kovacs v. Brewer, 356 U. S. 604.)

. Even where there has been a change in circumstances, the New York court may not modify the foreign custody decree unless it finds that the foreign State had power to modify its own decree. (See Armstrong v. Grimes, 70 Misc 2d 549, citing Halvey v. Halvey, 330 U. S. 610.)